UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD RESTI,

    Plaintiff,

v.                                                                               Case No. 8:23-cv-1960-CPT

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Supplemental Security Income (SSI). (Doc. 24). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in May 2002 and began receiving SSI disability benefits as a child due to his autism. (R. 29, 38, 83–84, 190–98, 222). When the Plaintiff turned eighteen years old, however, the Social Security Administration (SSA) redetermined the Plaintiff's continued eligibility for benefits under the adult disability rules. *Id.* at 29, 31, 85–99; *see* 20 C.F.R. § 416.987. The SSA found that the Plaintiff was not disabled under these rules both initially and on reconsideration. (R. 31, 85–

124). At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in December 2022. *Id.* at 47–82, 146. The Plaintiff appeared at that proceeding without counsel and testified on his own behalf. *Id*. at 47–82. A vocational expert (VE) also testified, as did the Plaintiff's mother. *Id.*

In a decision issued in February 2023, the ALJ found that: (1) the substantial gainful activity rules did not apply because the claim involved an age eighteen redetermination; (2) the Plaintiff had the severe impairments of anxiety, depression, a learning disorder, autism spectrum disorder, and speech and language delay; (3) the Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) the Plaintiff had the residual functional capacity (RFC) to engage in a full range of work at all exertional levels with the nonexertional limitations that he could only understand, remember, complete, and otherwise perform simple, routine tasks and instructions with occasional interaction with others and could not perform any production-paced work; and (5) based on the VE's testimony, the Plaintiff could engage in several occupations that exist in significant numbers in the national economy. *Id.* at 29–40. In light of these findings, the ALJ concluded that the Plaintiff was not disabled as of April 21, 2021. *Id.* at 40.

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's subsequent request for review. *Id.* at 1–5. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to ascertaining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence,

or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

Although not entirely clear, the Plaintiff appears to raise two challenges on appeal: (1) the ALJ did not properly consider certain of the Plaintiff's impairments at step four in formulating his RFC; and (2) the ALJ posed an incomplete hypothetical to the VE at step five. (Doc. 24). Each of these challenges will be addressed in turn.

A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. To do so, an ALJ must discern from all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by his medically determinable impairments—severe and non-severe—and related symptoms. *Id.* § 416.945(a)(2) ("[The SSA] will consider all of [a claimant's] medically determinable impairments of which [it is] aware, including [a claimant's] medically determinable impairments that are not 'severe,' . . . when [the SSA] assess[es] a claimant's RFC."); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (same) (citation omitted). In rendering this finding, an ALJ must consider all medical opinions and prior administrative medical findings in a claimant's case record,

5

together with the other relevant evidence. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)); *see also* 20 C.F.R. § 416.913a(b)(1).

An ALJ, however, is not required to expressly discuss every piece of evidence in his decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Instead, the ALJ need only predicate his RFC determination on the claimant's condition "taken as a whole," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 416.920(e), 416.945(a). As long as the Court can ascertain from the ALJ's decision that he took into account all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. *Id.* § 416.945.

In this case, as mentioned previously, the ALJ found at step four that the Plaintiff had the RFC to perform a full range of work at all exertional levels with the limitations that he could only understand, remember, complete, and otherwise perform simple, routine tasks and instructions with occasional interaction with others and could not perform any production-paced work. (R. 33–34). In support of this assessment, the ALJ engaged in a robust review of the pertinent evidence of record. *Id.* at 33–38. In doing so, the ALJ acknowledged, among other things, that the Plaintiff was diagnosed in 2016 with anxiety, depression, and autism spectrum disorder, the latter of which—the ALJ observed—was the basis for his prior award of benefits. *Id.* at 34, 222, 503–05, 540–605, 611–14, 688–91. In addition, the ALJ recognized that

the Plaintiff was placed in an individualized education program (IEP) in 2016, which indicated he had a moderate language impairment, was working below grade level in all subjects, had difficulty remaining focused on tasks, and required extra time to complete his assignments. *Id.* at 34–35, 513–22.

Notwithstanding this evidence, however, the ALJ noted as well that the Plaintiff's IEP stated he was making progress in staying organized and establishing routines, and that he eventually was placed in the general education setting. *Id.* at 35, 513–22. The ALJ further noted that, according to subsequent records, the Plaintiff began attending the LiFT Academy in 2017 and that, even though he was anxious when presenting in front of the class and needed extra time and attention when processing verbal directions, he showed good progress there. *Id.* at 34–36, 76, 351–427, 742–57. The ALJ pointed out in this respect that the Plaintiff received "mostly As and Bs" at the LiFT Academy, which "teaches life skills and provides college preparation," and that he "successfully completed classes such as Algebra, Geometry, World History, English, Spanish, Music, and Social Studies." *Id.* at 36, 69–70, 351–427, 742–57. Indeed, the ALJ highlighted that the Plaintiff's report card revealed he earned a GPA of 3.9 during the 2021-2022 first semester and a GPA of 4.0 in his final semester. *Id.* at 36, 362, 755.

Along with this evidence, the ALJ cited the hearing testimony provided by the Plaintiff and his mother. *Id.* at 34. The ALJ commented that while the Plaintiff testified that he struggled with algebra and geometry, that he had trouble understanding what he read, and that he was afforded extra time for assignments, both

7

he and his mother stated that he was still able to obtain good grades. *Id.* at 34, 66–70, 72–73. The Plaintiff's mother also testified that the Plaintiff was working two days per week for ten hours each day on a "cleaning crew" at his church and school, and that he was "working up to" being employed on a full time basis. *Id*. at 34, 76–77.

In accordance with the progress the Plaintiff demonstrated at school and in the work environment, the ALJ advised that although there was documentation indicating the Plaintiff struggled with his anger in January 2020, medical records for the nearly three years since then showed that the Plaintiff's behavior was appropriate and that he was able to work with others. *Id*. at 35, 517, 519, 616–17, 628, 636, 658. By way of example, the ALJ identified treatment notes from March 2021, which described the Plaintiff as behaving cordially and compliantly, thinking "logical[ly] and [in a] goal directed" fashion, displaying "no inattention or distractibility," exhibiting "an adequate memory for recent and remote events," and being able to "underst[and] command[s] and follow[ ] directions" and to engage in "adequate interpersonal interaction." *Id.* at 35–36, 616–17. The ALJ likewise referenced treatment records from August 2021, which stated that the Plaintiff denied any anxiety or depression, had an appropriate mood and affect, and was cooperative. *Id.* at 35, 628, 636. And the ALJ pointed to treatment notes from October 2022, which indicated that the Plaintiff's "mood and affect were neutral," that his "thought content" and "judgment" were normal, and that he was "fully alert and oriented and had a normal appearance." *Id.* at 36, 722, 725.

The ALJ also observed that the Plaintiff's Global Assessment of Functioning (GAF) score[4] was consistently in the high sixties or seventies, which "reflect[ed that he had] only mild symptoms or some difficulty in social, occupational, or school functioning;" that he was nonetheless "generally functioning well and ha[d] some meaningful interpersonal relationships;" and that he was making progress on his goals. *Id.* at 36, 575–604.

Lastly, as part of his analysis, the ALJ discussed the pertinent assessments of three consultative psychologists, Dr. Pauline Hightower, Dr. George Grubbs, and Dr. Peter Bursten. *Id*. at 34–37. Dr. Hightower opined in April 2021 that the Plaintiff could understand and retain simple, repetitive instructions, had moderate limitations relating to others, and could adapt to modest changes and task demands. *Id.* at 37, 91–97. Dr. Grubbs similarly found in March 2022 that the Plaintiff could understand, remember, and complete simple instructions and tasks but would have difficulties cooperating with others and reacting or adapting appropriately to his work environment. *Id.* at 37, 103–09. The ALJ found Dr. Hightower's and Dr. Grubbs's determinations to be only "partially persuasive" because while they were "fairly well supported" and "fairly consistent with each other," neither psychologist had the benefit of "personally evaluating" the Plaintiff like the ALJ did or considering the evidence the ALJ received at the hearing level. *Id.* at 37. That evidence, the ALJ

---

[4] The GAF scale is used by mental health professionals "to rate the occupational, psychological, and social functioning of adults." *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (per curiam) (citing Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Rev. 4th ed. 2000)).

9

reiterated, included the Plaintiff's "final report cards and school records, which recount[ed] his graduation and subsequent part-time employment." *Id.* at 37, 351–75, 742–56.

As for Dr. Bursten, he examined the Plaintiff in March 2021 and diagnosed him with a learning disorder and borderline intellectual functioning (BIF), the latter of which was based on a full-scale intelligence quotient (IQ) score of seventy-four. *Id.* at 35–36, 616–19. Dr. Bursten also found that the Plaintiff had a processing speed score of sixty-two, which fell in the one percentile rank. *Id.* at 618. At the end of his report, Dr. Bursten stated:

> There is an [eighteen] point difference between the [Plaintiff's] verbal and perceptual reasoning Composite Scores. This discrepancy indicates that [the Plaintiff] is more adept on tasks that rely on hand eye coordination and constructional skill, in comparison to tasks that rely on verbally mediated abilities. This discrepancy between Verbal Comprehension and Perceptual Reasoning also strongly suggests the presence of a learning disability.
>
> [The Plaintiff's] formal verbal skills are weak. For example, the [Plaintiff's] vocabulary/word recognition skills and his verbal reasoning skills are substandard. Scope of verbally mediated information is inhibited as well. Although the [Plaintiff's] hand eye coordination and constructional skills all fall within average limits, on tasks that rely on gross motor speed, marked deficits were noted. Again, such discrepancies suggest learning related problems.

*Id.*

The ALJ deemed Dr. Bursten's BIF diagnosis to be "inconsistent with the [Plaintiff's] adaptive functioning" and declined to adopt it as a severe impairment. *Id.* at 35. To buttress this determination, the ALJ observed that an adult function report

completed by the Plaintiff's mother demonstrated that, among other things, the Plaintiff was able to perform "all personal chores independently," help with "household chores," "prepare simple meals," and attend a "post-secondary school," where the Plaintiff and his mother testified he "graduated with As and Bs." *Id.* at 35, 68–70, 256, 258–61.

The ALJ ultimately summarized his evaluation of all of the above-referenced evidence as it related to his RFC determination:

> Cognitively, the claimant's diagnoses of autism spectrum disorder, a speech and language delay, and a learning disorder support the further reduction in the [RFC]. However, again, the [Plaintiff's] performance at school, at home, and at work all evidence his ability to function quite well with certain restrictions. To accommodate these conditions, the undersigned has limited the [Plaintiff] to understand, remember, and completing simple, routine tasks with no production-paced work.

*Id.* at 35. The ALJ later expounded on his reasoning, explaining that the restriction in the RFC to simple and routine tasks with no production-paced work better accommodated Dr. Hightower's and Dr. Grubbs's assessments that the Plaintiff experienced problems with adapting to changes or work environments or managing himself, especially since he required extra time in school. *Id.* at 37, 517, 746. The ALJ added, however, that he included the more specific restriction that the Plaintiff have only occasional interaction with others because Dr. Hightower's and Dr. Grubbs's limitations regarding the Plaintiff's difficulties cooperating with others were too vague. *Id.* at 37.

The Plaintiff now argues that the ALJ's RFC determination is flawed because it does not "fully and adequately address the [Plaintiff's] specific learning disorder, and in particular, his extremely low processing speed" and "marked deficits in gross motor speed." (Doc. 24 at 5). To bolster this contention, the Plaintiff points to Dr. Bursten's findings that the Plaintiff exhibited "a processing speed of [sixty-two], which is in the [one] percentile rank," and had "marked deficits with tasks that rely on gross motor speed."[5] *Id.*; (R. 618).

There are several problems with this argument. To begin, the Plaintiff does not contest the ALJ's assessment of any of the three consultants' opinions, including those of Dr. Bursten. *See* 20 C.F.R. § 416.920c(c) (setting forth the five factors that an ALJ must consider in determining the persuasiveness of a medical opinion); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (same) (citation omitted). As a result, the Plaintiff has waived any such challenge. *Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation

---

[5] The Plaintiff suggests at one point that Dr. Bursten found the Plaintiff's "gross motor speed . . . [to] be in the lowest [first] percentile." (Doc. 24 at 5). This is incorrect. Dr. Bursten stated that the Plaintiff scored in the first percentile in *processing* speed and that he had "marked deficits" relative to "tasks . . . rely[ing] on gross *motor* speed." (R. 618) (emphasis added).

12

marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).

Moreover, it is evident from the ALJ's decision that he considered the entirety of the Plaintiff's condition in arriving at his RFC determination, *Jamison*, 814 F.2d at 588 (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 416.920b, 416.945(a).  As detailed by the ALJ, this included, on the one hand, the Plaintiff's autism, learning disorder, and speech and language delay impairments; the difficulties he experienced in understanding and remaining focused; his need for extra time, especially when processing verbal directions; and his struggles in adapting to changes and work environments.  (R. 34–36, 66, 72–73, 517, 519, 746). On the other hand, it also included the Plaintiff's "ability to function quite well" at school, as reflected by his successful completion of classes at the LiFT Academy ranging from Algebra and Geometry to English, Spanish, and Social Studies and his attendant high grades; his capacity to perform "all [of his] personal chores independently" and to assist in numerous other tasks around the house; and his capability to work ten hour days twice a week on a cleaning crew at his school and church with the goal of engaging in full time employment.  *Id.* at 34–38, 65–77, 256–87, 351–427, 512–22, 540–614, 688–92, 742–57.  This evidence surpasses the "more than a mere scintilla" threshold required for affirmance of the ALJ's decision.  *Biestek*, 587 U.S. at 103.

The Plaintiff's efforts to avoid this conclusion by pointing to Dr. Bursten's assessments of his processing and gross motor speed fail. (Doc. 24 at 5). The ALJ's decision reveals that he carefully considered the medical records relating to the Plaintiff's diminished capacity to take in and digest information and limited him to only simple, routine tasks and no production-paced work as a result. (R. 33–38). The Plaintiff's conclusory assertion that these restrictions are inadequate is facially insufficient and is also unsupported by the case law. *See, e.g.*, *Helene M. v. Comm'r, Soc. Sec. Admin.*, 2020 WL 13566514, at *11 (N.D. Ga. Oct. 22, 2020) (finding that the ALJ accounted for the claimant's slow processing speed by precluding the claimant from engaging in any job that requires production-paced work, such as an assembly line); *Shanks v. Comm'r, Soc. Sec. Admin*, 2018 WL 1358382, at *8 (N.D. Ga. Mar. 15, 2018) (determining that the ALJ accommodated the claimant's issues with concentration, persistence, and pace caused by the claimant's slow processing speed by limiting the claimant to simple, routine, repetitive-type tasks, with only occasional changes in the work setting and no fast-paced production work); *McCarl v. Colvin*, 2015 WL 540067, at *3 (W.D. Pa. Feb. 10, 2015) (deeming a limitation to no production-paced work to be sufficient for someone with slow processing speed); *see also Quisenberry v. Comm'r of Soc. Sec.*, 2013 WL 4507931, at *9 (E.D. Mich. Aug. 23, 2013) (finding that the RFC accounted for the claimant's learning disability by limiting him to jobs that require simple, unskilled, non-production work); *Gray v. Colvin*, 2015 WL 225811, at *2 (D. Me. Jan. 16, 2015) (upholding the ALJ's finding that the claimant's learning disabilities did not foreclose him from engaging in work which involved, among other

things, simple, routine, and repetitive tasks performed in a non-production type environment).

Nor is the Court persuaded by the Plaintiff's reliance on the district court's decision in *Neil v. Berryhill*, 2017 WL 604018 (M.D. Fla. Feb. 15, 2017). In *Neil*, the court ruled that the ALJ did not properly consider the opinion of a particular consultative psychologist relative to the claimant's mental impairments, and also did not articulate with the requisite specificity the weight the ALJ assigned to that opinion. *Neil*, 2017 WL 604018, at *3–4. The court went on to find that this error was not harmless, "[e]specially given that there [were] no treating opinions or other examining opinions on the [claimant's] mental limitations" in the record. *Id.* at *4.

*Neil* is of no help to the Plaintiff here. As noted above, the Plaintiff does not quarrel with the ALJ's evaluation of Dr. Bursten's assessments and has waived any such challenge. Additionally, unlike in *Neil*, the record here contains the opinions of two other psychologists, Drs. Hightower and Grubbs. (R. 37, 91–97, 103–09). It also includes a plethora of other information pertaining to the Plaintiff's mental limitations. *Id.* at 33–38.

B.

The Plaintiff's second challenge concerns the hypothetical the ALJ posed to the VE at the hearing. (Doc. 24 at 5–6). "A [VE] is an expert on the kinds of jobs an individual can perform based on [his] capacity and impairments." *Phillips*, 357 F.3d at 1240. Where, as here, an ALJ utilizes a VE to assist the ALJ at step five, the ALJ "will pose hypothetical question(s) to the [VE] to establish whether someone with the

limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id.* The hypothetical the ALJ presents to the VE must account for all the claimant's restrictions. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted). When the ALJ properly rejects purported impairments or limitations, however, the ALJ need not include those impairments or limitations in the hypothetical presented to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

In this case, the ALJ asked the VE to consider a hypothetical individual who could engage in "work at all exertional levels and [who could] understand, remember[,] complete, and otherwise perform simple, routine tasks and instructions in a job with occasional interaction with others, no production-paced work, production-paced, fast-paced, hourly quota sort of stressful work." (R. 78). When the ALJ then inquired of the VE whether such an individual could secure employment, the VE responded in the affirmative and identified the positions of field crop harvest worker, landscape laborer, and cleaner II as jobs the Plaintiff could perform. *Id.* at 78–79.

The Plaintiff now contends that there is a reasonable probability that the VE would have excluded these occupations "had the [ALJ] found that the [Plaintiff's] ability to [engage in] tasks that rely on gross motor speed would be in the lowest [one] percentile," and asked the VE to take into account this limitation "in addition to the other limitations contained in the hypothetical question to the [VE]." (Doc. 24 at 5–6). The Plaintiff attempts to bolster this assertion with copies of the descriptions of the

positions the VE identified, which he asserts show that these jobs "require[ ] manual dexterity, finger dexterity, and motor coordination, either in the lowest [one-third] excluding the bottom [ten percent], or the middle third of the population." *Id.* at 5; *see also* (Docs. 24-1–24-3).

This argument is meritless as well. Most obviously, as the Commissioner points out and as noted above, Dr. Bursten did not actually determine that the Plaintiff's gross motor speed ranked in the lowest one percentile. *See* (R. 618); (Doc. 25 at 5–6). Instead, as also noted above, Dr. Bursten found that the Plaintiff's *processing* speed fell in that category, and separately determined that the Plaintiff had "marked deficits" on tasks that relied on gross *motor* speed. (R. 618). The Plaintiff does not explain this discrepancy, nor does he supply evidence establishing that his claimed "marked deficits" in gross motor speed placed him in the bottom one percentile.

In addition to this threshold problem, the ALJ—as discussed earlier—was not obligated to include in his hypothetical any limitations that he properly considered and rejected. *Crawford*, 363 F.3d at 1161 (11th Cir. 2004) (per curiam). For the reasons stated above, it is apparent from the ALJ's decision that he considered Dr. Bursten's assessments, along with the whole of the Plaintiff's condition and incorporated into his RFC determination those restrictions he found to be substantiated by the record. The Plaintiff does not establish otherwise. The Plaintiff also does not show how an individual with "marked deficits in gross motor speed" would be incapable of

17

performing the three jobs identified by the VE or how the inclusion of this physical limitation would have changed the VE's response.[6]

## IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of September 2024.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

---

[6] Any other arguments the Plaintiff makes that are not mentioned herein are deemed to be waived due to the perfunctory nature in which they are raised. *Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.